# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-381

**IN RE:  VIRGINIA HARDIN DERBY**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2005-4788
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
Marc T. Amy, Judges.

**REVERSED.**

**Michael H. Schwartzberg**
**Vamvoras, Schwartzberg & Antoon, LLC**
**1111 Ryan Street**
**Lake Charles, LA  70601**
**(337) 433-1621**
**COUNSEL FOR APPELLANT:**
    **Virginia Derby Jordan**

**James A. Babst**
**Hamilton, Brown & Babst**
**228 St. Charles Ave., Suite 1028**
**New Orleans, LA  70130**
**(504) 309-5783**
**COUNSEL FOR INTERICT:**
    **Virginia Hardin Derby (Now Deceased)**

**Ronald S. Haley, Jr.**
**Haley & Associates**
**8211 Goodwood Blvd., Suite E**
**Baton Rouge, LA  70806**
**(225) 663-8869**
**COUNSEL FOR APPELLEE:**
    **Bessie Derby Miller**

**COOKS, Judge.**

On September 19, 2005, Virginia Derby Jordan, filed an interdiction proceeding in the Fourteenth Judicial District Court. The interdict was Ms. Jordan's mother, Virginia Hardin Derby. At the time of the interdiction proceedings, Ms. Derby was a ninety (90) year-old resident of a nursing home in New Orleans. Ms. Derby suffered from dementia and other physical problems that prevented her from caring for herself. At the pertinent time, Ms. Derby had been evacuated under emergency conditions prompted by the impending arrival of Hurricane Katrina. She was transported from St. Anna's Residence in New Orleans to the Holly Hill House Nursing Home in Sulphur, Louisiana.

Ms. Jordan maintained she was forced to initiate the interdiction proceeding because her older sister, Bessie Derby Miller, who had Ms. Derby's power of attorney, made no effort to evacuate Ms. Derby from harm's way as Hurricane Katrina approached New Orleans.

At the interdiction determination, the trial judge temporarily interdicted Ms. Derby and appointed Ms. Jordan as temporary curator. The trial judge further authorized the withdrawal of $10,000.00 from Ms. Derby's bank account for her transportation and care expenses. Two days prior to Hurricane Rita making landfall in Southwest Louisiana, Ms. Jordan drove Ms. Derby to her home in Virginia. Hurricane Katrina caused substantial property damage and loss of life for those who resided in Southern Louisiana. Hurricane Rita, only a few weeks following Katrina, caused substantial damage to property and threatened the lives of those who lived in Southwest Louisiana

On October 13, 2005, Ms. Miller, who was a resident of Maryland, filed an "Answer and Reconventional Demand" in the Fourteenth Judicial District Court. Ms. Miller asked to be appointed curator and noted she had, prior to the interdiction

proceedings, a valid power of attorney over her mother. She also denied her mother faced any imminent harm as a result of any inaction on her part.

After a telephone conference, the trial court continued in effect the previous order interdicting Ms. Derby. The trial court found the appointment of Ms. Jordan as temporary curator had expired and appointed Ms. Miller the temporary curator. Ms. Jordan's expenditures to date were approved, and the trial court authorized further expenditures by Ms. Jordan, who was housing Ms. Derby, up to the remainder of the $10,000.00 previously withdrawn.

On March 6, 2007, Ms. Jordan filed a "Motion to Remove Bessie Derby Miller as Temporary Curator and Substitute Virginia T. Derby Jordan as Preliminary Curator." Ms. Jordan alleged her mother was moved from her home in Virginia to the home of Ms. Miller's daughter's next-door neighbor in North Carolina. She further alleged that, Ms. Miller thereafter moved her mother back to another New Orleans nursing home in 2006, largely because of Ms. Miller's refusal to pay for services performed by Ms. Derby's prior nursing home. That same day, Ms. Jordan also filed for a Permanent Injunction Prohibiting the Sale of Personal Property, which sought to prohibit the sale of certain property of Ms. Derby at auction. A hearing was held on the request and a preliminary injunction was issued prohibiting the sale of those items.

On April 24, 2007, Ms. Miller filed a petition to have herself appointed and confirmed as permanent curator. A reconventional demand was also filed against Ms. Jordan for damages, as well as an opposition to the motion to remove Ms. Miller as temporary curator. Ms. Miller requested court costs and attorney fees incurred in setting aside Ms. Jordan's appointment as temporary curator.

A hearing was held beginning on May 29, 2007 and the court ruled on all issues. The Motion to Remove Bessie Derby Miller as Temporary Curator and Substitute Virginia T. Derby Jordan as Preliminary Curator was denied by the trial

court. Ms. Miller was appointed permanent curator for Ms. Derby. Ms. Miller was ordered to submit to the court a motion and documentation to have damages and appropriate costs assessed against Ms. Jordan, and Ms. Jordan was provided the opportunity to oppose said motion. Ms. Jordan was ordered to present written proof to the court of her ownership of any items which were the subject of the temporary restraining order enjoining the sale of various items of Ms. Derby at auction.

On January 17, 2008, after continued disagreement as to the access and physical housing of Ms. Derby, as well as property ownership issues, the trial court issued judgment casting Ms. Jordan with various attorney fees and court costs in the amount of $122,220.76. The judgment also reserved "to the Curator, Bessie Derby Miller, on behalf of the estate of the Interdict, to pursue [sic] all claims for damages resulting from the issuance of a Temporary Restraining Order stopping the EBay action [sic] of certain items belonging to the estate of the Interdict, subject to a further ruling on this court regarding the ownership of said items." The trial court then hand wrote on the Judgment the notation "[t]o be set at hearing on March 11, 2008 at 9:00 a.m."

Ms. Miller filed a Motion for Partial Summary Judgment on February 14, 2008 to which Ms. Jordan filed an Opposition. The trial court set a hearing on the motion for partial summary judgment for March 11, 2008, which was rescheduled to April 7, 2008. That hearing was never held, as Ms. Derby passed away on April 4, 2008.

On August 27, 2008, a "Closing Order" was entered by the trial court, which stated in pertinent part as follows:

> The court having been informed that the interdict, Virginia Hardin Derby, died on the 4th day of April, 2008, in the Parish of Orleans, and having been provided with a certified copy of the certificate of death attesting to such fact, which certified copy is attached hereto, there being no dispute in law that an interdiction proceeding abates on the death of the interdict but that the curatrix

4

remains responsible to file with the court a final account pursuant to [La.Code Civ.P.] arts. 3333, 4393, 4398, and 4569.

> **IT IS ORDERED** that this matter be deemed **ABATED** as of April 4, 2008, the date of the interdict's death;

> **IT IS FURTHER ORDERED** that Bessie Derby Miller, curatrix at the time of the interdict's death, file a final account with the court on or before the 31ˢᵗ day of October, 2008; and

> **IT IS FURTHER ORDERED** that the Clerk hold this matter open only for the filing of the final accounting and treat it otherwise as having been **CLOSED** as of April 4, 2008,

Apart from the final accounting by Ms. Miller, there was no other action taken, including any collection efforts, until the revival action at issue in this appeal.

On December 27, 2017, Ms. Miller filed an "Ex Parte Motion for Revival" seeking to revive the judgment of January 17, 2008. Attached to the motion was an "Affidavit of Holder & Owner of Judgment of January 17, 2008." That same day, the trial court granted the ex parte motion and revived the judgment in favor of Ms. Miller. This appeal followed. Ms. Jordan argues the trial court erred in granting the ex parte motion for revival.

## ANALYSIS

A money judgment may be revived at any time before it prescribes by an interested party in an ordinary proceeding brought in the court in which the judgment was rendered. La.Code Civ.P. art. 2031. That article provides as follows:

> A. A money judgment may be revived at any time before it prescribes by an interested party by the filing of an ex parte motion brought in the court and suit in which the judgment was rendered. The filing of the motion to revive interrupts the prescriptive period applicable to the judgment. The motion to revive judgment shall be accompanied by an affidavit of the holder and owner of the judgment, stating that the original judgment has not been satisfied. A judgment shall thereupon be rendered reviving the original judgment. No citation or service of process of the motion to revive shall be required. The court may order the judgment debtor to pay additional court costs and reasonable attorney fees in connection with the judgment revival action. Notice of signing of the judgment of revival shall be mailed by the clerk of court to the judgment debtor at his last known address as reflected in the suit record.

"A money judgment rendered by a trial court of this state is prescribed by the lapse of ten years from its signing if no appeal has been taken, or, if an appeal has been taken, it is prescribed by the lapse of ten years from the time the judgment becomes final." La.Civ.Code art. 3501.

Ms. Jordan contends the January 17, 2008 judgment revived by the trial court was a partial ruling in the case with pending, unresolved issues between the parties and the case was abated upon the death of Ms. Derby, which under La.Code Civ.P. art. 1915(B) renders the judgment interlocutory and not final. In *Interdiction of Cahn*, 523 So.2d 4 (La.App. 4 Cir.1988), the provisional curatrix attempted to tax costs incurred in removing the former curatrix to the estate of the interdict. The court in *Cahn* held, because the judgment was not final before the interdict died, the judgment could not be enforced. The court reasoned:

> Had that judgment become final before the interdict died, that position would have been correct. [La.Code Civ.P. art. 4551]. However once abatement occurs, whether at the trial or appellate level, the proceedings cease and the only matter that can be considered is the final accounting by the curatrix. *Ruiz v. Pons*, [141 La. 110, 74 So. 713 (1917)]. Therefore[,] the trial court could not assess costs once the proceedings abated. Thus, since the interdiction suit abated prior to the judgment becoming final, each party must pay his own costs. *In re Jones*, [117 La. 106, 41 So. 431 (1906)].

*Id.* at 5.

We find the same reasoning applies in the present case. The January 17, 2008 judgment clearly set forth there were still pending issues that were not resolved on the date the judgment was signed. These matters remained unresolved on the date of the interdict's death (a hearing on the matters was set to be heard April 7, 2008, three days after Ms. Derby's death). Thus, Ms. Jordan argues the judgment was not final and appealable on the date of Ms. Derby's death, as it did not decide all of the pending issues between the parties. Louisiana Code of Civil Procedure Article 1915(B) provides:

6

B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

(2) In the absence of such a determination and designation, any such order or decision shall not constitute a final judgment for the purpose of an immediate appeal and may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

Ms. Jordan notes the January 17, 2008 judgment did not have any language designating it as a final judgment. Therefore, we agree with Ms. Jordan that the January 17, 2008 judgment was an interlocutory judgment which could have been "revised at any time prior to rendition of the judgment." Because the judgment was not final and appealable, the interdiction proceedings abated upon Ms. Derby's death. As the court in *Cahn*, 523 So.2d at 5, stated "once abatement occurs, whether at the trial or appellate level, the proceedings cease and the only matter that can be considered is the final accounting by the curatrix." Accordingly, the January 17, 2008 interlocutory judgment was not a final judgment and not susceptible of revival thereafter.[1]

---

[1] Ms. Jordan also argued Ms. Miller did not have standing to file the ex parte motion for revival because her appointment as curator was extinguished by operation of law upon the death of Ms. Derby, the interdict. Ms. Jordan further argues the January 17, 2008 judgment was rendered in Ms. Miller's capacity as Curator of Ms. Derby and there was no reference to Ms. Miller individually. The action filed by Ms. Miller is not a personal action, but one that was brought on behalf of the interdict. Interdiction proceedings are purely personal to the interdict and once the interdict dies the proceedings are abated. *Ruiz v. Pons*, 141 La. 110, 74 So. 713 (1917); *In re Jones*, 117 La. 106, 41 So. 431 (1906); *In re Lambert*, 115 La. 469, 39 So. 447 (1905). Thus, Ms. Miller's appointment as curator, as well as Ms. Miller's procedural capacity to act as Curator, ended and was extinguished by the death of the interdict. Any action for the collection of this judgment was for the estate of Ms. Derby and not on behalf of Ms. Miller personally. Therefore, even if the January 17, 2008 judgment was a final judgment, Ms. Miller would not have standing to file the Motion for Revival in her personal capacity.

**DECREE**

For the foregoing reasons, the judgment of the trial court granting Ms. Miller's Motion for Revival is reversed. Costs of this appeal are assessed to appellee, Bessie Derby Miller.

**REVERSED.**